UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NAIYM SHAHAAB TALIB,
a/k/a Lonnie Walker

      Plaintiff,

v.                            Case No. 3:14-cv-1388-J-39MCR

BRIAN RIEDL, et al.,[1]

      Defendants.

_____

**ORDER**

**I. Status**

Plaintiff Naiym Shahaab Talib, an inmate of the Florida penal system, is proceeding in this action on a pro se Amended Civil Rights Complaint (Amended Complaint) (Doc. 22) filed pursuant to 42 U.S.C. § 1983.  Plaintiff names Brian Riedl, the Warden for the Reception and Medical Center (RMC), Christopher Trowell, a correctional officer at RMC, and Sgt. Taylor, a correctional officer sergeant at RMC, as the Defendants.  The Court will construe the pro se Amended Complaint liberally.  In doing so, the Court finds that Plaintiff raises the following claims.  Plaintiff asserts that Defendant Trowell violated his Eighth Amendment right to be free from cruel and unusual punishment when he used unnecessary and excessive force on December 9, 2011.  Plaintiff also claims that Defendants Taylor and Riedl violated his Eighth

_____

[1] The **Clerk** shall correct the docket to show that Defendant Brian Riedl's surname is Riedl, not Reidl.

Amendment rights by failing to protect him from Defendant Trowell. Plaintiff raises a First Amendment violation, based on the Trowell's alleged retaliatory actions done in response to Plaintiff's grievances, of beating Plaintiff, taking his wheelchair and eyeglasses, and filing a false disciplinary report against him. Plaintiff additionally claims that Defendant Riedl retaliated against him by transferring him to a different institution and having him placed in disciplinary and close management confinement. As relief, Plaintiff seeks compensatory and punitive damages, injunctive relief, the appointment of counsel, and other proper and just relief.

This cause is before the Court on Defendants' Motion for Summary Judgment (Defendants' Motion) (Doc. 60).[2]  Plaintiff was advised of the provisions of Federal Rule of Civil Procedure 56, notified that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and given an opportunity to respond.  See Summary Judgment Notice (Doc. 61). Plaintiff responded.  See Plaintiff's Statement of Disputed Factual Issues (Statement) (Doc. 68); Plaintiff's Affidavit (Doc. 69); Plaintiff's Declaration (Doc. 70); Plaintiff's Brief (Doc. 81);

---

[2] The Court will refer to the exhibits appended to Defendants' Motion as "Ex."  The Court has also reviewed the Supplement to Defendant's Exhibit A (Doc. 87).

Plaintiff's Affidavit (Doc. 96); Plaintiff's Affidavit (Doc. 98); and Affidavit of Jason Lavender (Doc. 101).

## II. Plaintiff's Allegations in the Amended Complaint

In his verified Amended Complaint,[3] Plaintiff alleges that, on December 6, 2011, while he was confined at RMC, Defendant Trowell yelled at him, while they were both in the officer's station, about using the grievance process, and threatened to subject him to disciplinary and close management confinement if he did not stop filing institutional grievances.  Amended Complaint at 6. Plaintiff responded that he had the right to use the grievance process without being threatened.  Id.  Upon leaving the officer's station, Defendant Trowell followed Plaintiff to his bunk in the dormitory.  Id.  Defendant Trowell directed Plaintiff to unlock his locker and stand aside.  Id. Trowell searched Plaintiff's bunk and locker, and seized a number of items.  Id.  He wrote Plaintiff three corrective consultations for possession of contraband.  Id. Defendant Trowell spoke against Plaintiff's religious beliefs and revealed his hatred of Plaintiff.  Id. at 6-7.  Defendant Trowell summoned Plaintiff to the officer's station and told him that this was his first lesson, but more would come.  Id. at 7.

---

[3] See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014) (per curiam) (citations omitted) ("The factual assertions that [Plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [Plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

Defendant Taylor arrived at the officer's station, and Plaintiff related to him that Trowell had "attacked" him for using the grievance process and filing complaints about Sgt. Merula, Officer Kelly, and Trowell. Id. Plaintiff reported that he had been called to the officer's station and threatened by Trowell. Id. Plaintiff also complained that Trowell had torn up his bunk, taken his property, written three corrective consultations, and threatened further actions. Id. Taylor did not admonish Trowell or take any actions to protect Plaintiff from Trowell, like moving Plaintiff to another dormitory. Id.

On December 6, 2011, Plaintiff filed grievances concerning Trowell's seizure of property, his threats to lock Plaintiff up for using the grievance process, and Taylor's refusal to help or protect Plaintiff from Trowell, as well as other grievances. Id. at 8. On December 9, 2011, Trowell called Plaintiff to the officer's station and talked to him about filing grievances. Id. Trowell told Plaintiff to "get ready because it was coming." Id.

That evening, Trowel entered the open bay for mail call. Id. He called inmate Edgar Seward, who slept next to Plaintiff, to pick up his mail containing grievances. Id. The grievances had been written by Plaintiff for Seward, a terminally ill inmate. Id. at 8-9. Trowell asked Seward whether he wrote the grievances. Id. at 9. Trowell kept Seward's grievances. Id.

Thereafter, Trowell arrived at Plaintiff's bunk. _Id_. Plaintiff was doing legal work, when Trowell demanded to see Plaintiff's handwriting. _Id_. Plaintiff refused. _Id_. Trowell attempted to take Plaintiff's brown legal folder and hit Plaintiff on the left side of his face with "a balled handcuffed fist." _Id_. Trowell then hit Plaintiff on his left shoulder, sprayed him with a chemical agent, and kicked him in the groin. _Id_. Trowell took Plaintiff's eyeglasses and state issued wheelchair. _Id_.

Trowell wrote a false statement in his disciplinary report against Plaintiff, claiming he arrived at Plaintiff's bunk to conduct a search of Plaintiff's locker when he actually proceeded to Plaintiff's bunk to obtain evidence of Plaintiff's handwriting. _Id_. at 10.

Defendant Riedl immediately transferred Plaintiff on December 12, 2011. _Id_. Plaintiff was transferred without his eyeglasses, a wheelchair, and the grievances from December 6, 2011. _Id_. Plaintiff alleges these grievances constituted useful evidence for both the disciplinary and close management proceedings. _Id_. Plaintiff blames Riedl for preventing him from putting on his defense at the December 26, 2011 disciplinary hearing and the January 11, 2012 close management hearing because Riedl failed to release the grievances until January 13, 2012. _Id_.

### III. Summary Judgment Standard

The Eleventh Circuit set forth the summary judgment standard.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law controls which facts are material and which are irrelevant. Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1196 (11th Cir. 1997). Typically, the nonmoving party may not rest upon only the allegations of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). A pro se plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence. See Murrell v. Bennett, 615 F.2d 306, 310 n.5 (5th Cir. 1980). Nevertheless, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). "[A]ffidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." Ellis v. England, 432 F.3d 1321, 1327 (11th Cir. 2005).

As we've emphasized, "[w]hen the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Unsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary

> judgment.  <u>See</u> <u>Bennett v. Parker</u>, 898 F.2d
> 1530, 1532-34 (11th Cir. 1990) (discounting
> inmate's claim as a conclusory allegation of
> serious injury that was unsupported by any
> physical evidence, medical records, or the
> corroborating testimony of witnesses).
> Moreover, "[w]hen opposing parties tell two
> different stories, one of which is blatantly
> contradicted by the record, so that no
> reasonable jury could believe it, a court
> should not adopt that version of the facts for
> purposes of ruling on a motion for summary
> judgment." <u>Scott v. Harris</u>, 550 U.S. 372,
> 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

<u>Howard v. Memnon</u>, 572 F. App'x 692, 694-95 (11th Cir. 2014) (per

curiam) (footnote omitted).  In an action involving the alleged

violation of a plaintiff's federal constitutional rights under 42

U.S.C. § 1983, "assuming all facts in the light most favorable to

[plaintiff, as the non-moving party]," summary judgment is properly

entered in favor of a defendant where "no genuine issue of material

fact exist[s] as to whether [plaintiff]'s constitutional rights

were violated." <u>McKinney v. Sheriff</u>, 520 F. App'x 903, 905 (11th

Cir. 2013) (per curiam).

## IV. Defendants' Motion

Defendants contend that they are entitled to summary judgment

because: (1) Plaintiff has failed to establish an Eighth Amendment

violation against Defendant Trowell based on a claim of excessive

use of force; (2) Plaintiff has failed to establish a First

Amendment violation against Defendant Trowell based on a

retaliation claim; (3) Plaintiff has failed to establish an Eighth

Amendment violation against Defendants Riedl and Taylor for failure

to protect; (4) Plaintiff has failed to establish any constitutional deprivation with respect to the disciplinary report, disciplinary hearing, and close management confinement decision as he did not have a constitutionally protected liberty interest; (5) Plaintiff has failed to establish a constitutional deprivation based on religion; (6) Plaintiff is barred from recovering compensatory or punitive damages due to the lack of physical injury pursuant to 42 U.S.C. § 1997e(e); (7) Plaintiff's deprivation of property claim is subject to dismissal; (8) Plaintiff is not entitled to the appointment of counsel; (9) Defendants are entitled to qualified immunity; (10) Defendants are entitled to Eleventh Amendment immunity to the extent Plaintiff is suing them in their official capacities; and (11) Plaintiff's claim for injunctive relief is moot.

Exhibits are appended to Defendants' Motion, including the Declaration of Christopher Trowell. Ex. A. Trowell states that on December 9, 2011, he was assigned to RMC, E-dorm, as the housing officer. Id. at 1. He notes that he conducted a routine search of Plaintiff's cell on Friday, December 6, 2011. Id. Trowell further states that on December 9, 2011, while attempting to perform a routine search of Plaintiff's locker, the following occurred:

> the inmate stood up off his bunk and grabbed
> my right hand. I then snatched my right hand
> away from Inmate Walker and ordered him to
> turn around and submit to hand restraints.
> Inmate Walker turned around and before I could
> apply the hand restraints on him, he turned

back around and hit my right hand, knocking
the restraints to the floor.  Inmate Walker
then kicked the restraints on the floor under
his bunk.  At that time, I pressed the panic
button located on my hand held radio.  I then
broke the seal #0002138 on chemical agent
canister #11-64(2113501) and administered (3)
three, one second bursts of MK4 saber Red
Oleoresin Capsicum streamer in the direction
of Inmate Walker striking him in the head, and
upper torso areas.  Inmate Walker continued
his combative behavior and attempted to move
towards me.  I ordered Inmate Walker to stop,
to which he did not comply.  I then placed
both hands on Inmate Walker's shoulders,
turned him around and placed him face down on
the bunk and kept him pinned down with my body
weight until assistance arrived.  Once
Sergeant Parrish and Sergeant Taylor arrived,
they each assisted in placing Inmate Walker in
hand restraints.  At this time all force
ceased by this officer.  Plaintiff was taken
for a decontamination shower and post use of
force physical.

Id. at 1-2 (paragraph enumeration omitted).

Defendant Trowell notes that he issued Plaintiff a disciplinary report for battery on a corrections officer. Id. He attests that he did not threaten Plaintiff for filing grievances nor did he threaten Plaintiff with physical violence in the presence of Defendant Taylor. Supplement to Ex. A (Doc. 87).

The Declaration of Jeffrey Taylor is also appended to Defendants' Motion. Ex. B. Taylor states that on December 9, 2011, he was assigned to RMC as E-dorm security sergeant. Id. at 1. He notes that he responded to a panic button triggered by Defendant Trowell. Id. Taylor notes that when he arrived, Officer Trowell was holding Plaintiff face down on bunk E-1138S. Id.

9

Taylor states that he assisted in placing Plaintiff in hand restraints. <u>Id</u>. At that point, Plaintiff was taken for a decontamination shower and physical. <u>Id</u>. at 1-2. Taylor further attests that, prior to the event, he was not made aware by Plaintiff that he was in fear of being physically harmed by Trowell. <u>Id</u>. at 2. Taylor states he had no conversation with Plaintiff in which Plaintiff claimed he was threatened by Trowell. <u>Id</u>. Finally, Taylor says he was not aware of any information that would have led him to believe that Plaintiff was in danger of serious harm. <u>Id</u>.

Also of note, the Declaration of Brian Riedl is appended to Defendants' Motion. Ex. C. Riedl states that on December 9, 2011, he was assigned to RMC as the Warden. <u>Id</u>. at 1. Riedl's Declaration contains the following, in pertinent part:

> I was also not aware that Plaintiff (Inmate Walker) filed any grievances in relation to a search of his locker by Officer Trowell on December 6, 2011. Prior to December 9, 2011, I was not made aware of any alleged threats of physical violence to Plaintiff (Inmate Walker) from Officer Trowell.
>
> Since my hours of work on December 6, 2011, through December 9, 2011, were from 7:00 a.m. to 5:00 p.m., I was not at work during the search on December 6, 2011, or the use of force on December 9, 2011.
>
> I did not sign or order the transfer of Plaintiff (Inmate Walker).

Ex. C at 1-2 (paragraph enumeration omitted).

In addition, Defendants present the Emergency Room Record for Plaintiff dated December 9, 2011.  Ex. D.  It is a record of an inmate's post-use-of-force examination after an altercation with an officer resulting in the use of physical and chemical force.  Id. 1.  It notes that Plaintiff complained of pain, and the areas checked were the eyes, which were red; his left ear; left shoulder; and right scrotum.  Id.  Upon examination, the nurse noted Plaintiff's red eyes (from the chemical agent); a small raised area behind his left ear which was tender to the touch; a reddened area on his left shoulder; and a swollen right scrotum.  Id.  The nurse recorded that no treatment was administered, Plaintiff's disposition was to confinement, and his discharge instructions were to follow up in sick call.  Id.  The Diagram of Injury references the same injuries, but also notes that the eyes were teared and Plaintiff complained of pain to the swollen hernia area of the right scrotum.  Id. at 2.

Defendants provide the Declaration of Cynthia Davis, a Classification Supervisor at RMC.  Ex. E-1.  She reviewed Plaintiff's Offender Base Information System file and attests that it shows that Petitioner requested a transfer on November 3, 2011. Id. at 1; Ex. E-2.

Additional documents submitted to support the summary judgment motion are the Inmate Notice of Close Management, showing a referral for assignment to close management on December 15, 2011

for physical assault on staff on December 9, 2011, Ex. E-3; the Charging Disciplinary Report for battery on a corrections officer, dated December 9, 2011, Ex. F-1, Ex. F-2; the Disciplinary Report Hearing Information for the battery charge, Ex. F-3; and the Disciplinary Report Worksheet, Ex. F-4. The Disciplinary Report Hearing Information shows that Plaintiff pled not guilty, declined staff assistance, and was found guilty of the charge of battery on a corrections officer and given sixty days of disciplinary confinement. Ex. F-3. The recorded basis for the decision is:

> Based upon the investigation and the statement of provided [sic] by the officer that while he was attempting to conduct a locker search inmate Walker, Lonnie DC#080322 grabbed his right hand. When ordered to turn around and submit to hand restraints, inmate Walker turned around but before the officer could place hand restraints on inmate Walker he turned back around and knocked the hand restraints out of the officer's hand onto the floor and kicked them under his bunk. It became necessary to use spontaneous chemical agent force. All witness statements were reviewed and considered by the team in reaching their decision.

Id.[4]

On December 17, 2011, Plaintiff addressed a grievance of a sensitive nature to the Warden. Ex. F-5 (Doc. 60-6 at 5-7). Plaintiff stated that he acted in self defense, claiming that the Warden allowed Trowell to assault him, and Trowell acted in

---

[4] Defendants include the section of the Florida Administrative Code concerning the Control of Contraband, 33-602.203, F.A.C.  Ex. G.

retaliation for Plaintiff's grievances.  Id.  In response, on December 20, 2011, representatives of the Warden denied Plaintiff's grievance and concluded that Plaintiff had been unable to identify staff or inmates to substantiate his allegations; no video existed to substantiate his allegations; Plaintiff had been adjudicated guilty of the disciplinary charge of battery; and Trowell confirmed that all reports were true and accurate as reported.  Id., Response (Doc. 60-6 at 8).  Plaintiff's allegations of wrongdoing, however, were referred to the Inspector General's Office.  Id.

Plaintiff's witness statement from December 9, 2011 is included.  Id., Witness Statement (Doc. 60-6 at 9).  Witness James Burkes stated he did not see anything.  Id., Witness Statement (Doc. 60-6 at 10).  Witness Ryan Murphy stated he observed Trowell instruct Plaintiff to submit to hand restraints, but then Murphy walked to the restroom.  Id., Witness Statement (Doc. 60-6 at 11).  Witnesses Edgar Seward, Leroy Harden, and Eddie Duncan refused to provide written statements to the investigating officer.  Id., Witness Statements (Doc. 60-6 at 12-14).  See Disciplinary Investigative Report and Worksheet (Doc. 60-6 at 15-19).

In his deposition testimony, Plaintiff stated that Trowell asked him for something with Plaintiff's handwriting on it.  Ex. H at 54.[5]  Plaintiff refused to provide Trowell with a sample of his

_____

[5] With regard to the Deposition, the Court references the page numbers of the Deposition.

handwriting.  Id.  Plaintiff said that Trowell, in response, jumped on him, trying to take away Plaintiff's legal folder.  Id. Plaintiff attested that Trowell hit him with a balled fist "with his handcuffs."  Id.  Plaintiff stated that after the incident, he was escorted to medical, and the staff noted his injuries on the medical chart.  Id. at 67.  Plaintiff said he explained his injuries to the medical staff and they observed them.  Id. Plaintiff said he provided a list of witnesses to the investigator for his disciplinary proceeding, but the witnesses did not help him.  Id. at 70.

Plaintiff related that he believed the most important pieces of evidence to show retaliation were his grievances, but they were not provided to him.  Id. at 71.  He wanted to use them at both the disciplinary proceeding and the close management hearing.  Id. Plaintiff did not have any property with him at the time he was transferred to a different institution.  Id.  Plaintiff said he wanted to rely on the grievances filed on December 6 to show a motive for the assault by Trowell.  Id. at 72.  Plaintiff confirmed that he did tell the disciplinary team that he had filed grievances on December 6, 2011.  Id.  Plaintiff said the team did not try to obtain copies of the grievances from RMC.  Id. at 73.  Plaintiff stated that he testified about the grievances at the hearing and explained that Trowell's actions were in retaliation for those grievances.  Id. at 73-74, 80.

Plaintiff believes Trowell does not like him because Plaintiff is a Muslim, and Trowell may have had some negative experiences. Id. at 95.  "He told me he didn't care nothing for Islam."  Id. Plaintiff said Trowell did not like him because Plaintiff is a certified law clerk who knows how to use the grievance process and helps others file grievances, including inmate Edgar Seward.  Id. at 95-96.

As for his injuries, Plaintiff states he was in pain all over. Id. at 99.  He said his eyes teared from the chemical agents and were red.  Id.  He stated he had an abrasion on his head.  Id.  He noted that he received medical treatment at RMC, but he did not know what he was given.  Id.  He stated that he suffered from an inflamed hernia and no treatment was immediately provided; however, he did eventually receive a hernia procedure.  Id. at 99-100, 103.

With respect to Defendant Taylor, Plaintiff stated that Taylor did not show any concern for Plaintiff's safety.  Id.  Plaintiff said he told Taylor that Trowell threatened to get him, but Taylor failed to protect him.  Id.

When asked about his eyeglasses, apparently Plaintiff assumed Trowell took them because the eyeglasses were missing after the incident and were not replaced for eight months.  Id. at 120. Plaintiff refused to answer the question as to whether he saw Trowell take his glasses.  Id. at 121.  Plaintiff also blamed Trowell for taking his wheelchair.  Id.  He said his wheelchair did

not go to confinement with him, and he was pushed to confinement in a different wheelchair.  Id. at 121-22.  Plaintiff did not see where his wheelchair was placed.  Id. at 122.

In the Exhibits, Defendants also include Plaintiff's grievances dated December 6, 2011.  Ex. I.  Plaintiff grieved a number of matters.  He complained to the Warden that Trowell retaliated against him for filing grievances and threatened to harm him. Ex. I-1.  Plaintiff complained that Taylor allowed Trowell to take Plaintiff's property in retaliation for filing grievances. Ex. I-2.  Plaintiff said that he told Taylor about Trowell, but Taylor did nothing because Plaintiff is a Muslim who uses the grievance process.  Id.  Plaintiff complained that Trowell called him to his office and yelled at him for writing grievances against Trowell and other officers.  Ex. I-3.  Plaintiff sought the return of his property.  Ex. I-4; Ex. I-5; I-6; I-8.  He also complained that Trowell was vindictive and wrote him corrective consultations in retaliation for Plaintiff being a Muslim and a grievance writer. Ex. I-7.  Finally, Plaintiff complained about Trowell taking soup and a honey bun out of another inmate's locker.  Ex. I-9.

The Report of Force Used, Ex. J, is dated December 9, 2011, and includes the statements of Trowell, Officer Joseph Parrish, and Defendant Taylor.

## V.  Plaintiff's Response

Plaintiff provides several affidavits in support of his allegations.  Plaintiff states that his attempt to fight the disciplinary charge and his placement on close management was impaired because the officials failed to consider his grievances or obtain copies of his grievances.  Affidavit (Doc. 69) at 1-2. Plaintiff avers that Trowell's disciplinary charge was false, and Plaintiff's placement on close management was wrongly decided because timely grievances were filed against Trowell on December 6, 2011, warning the officials that Trowell had threatened to retaliate against Plaintiff and lock him up.  Affidavit (Doc. 96) at 1-2.  Plaintiff attests that he told Taylor about Trowell's threats, but Taylor failed to offer protection.  Id. at 2. Plaintiff states that the Defendants withheld the December 6, 2011 grievances from the December 20, 2011 disciplinary hearing and the January 9, 2012 close management hearing.  Id.  Plaintiff states that both Taylor and Riedl were placed on notice of Trowell's threats to have Plaintiff locked up.  Affidavit (Doc. 98) at 2. Plaintiff states that his December 6, 2011 grievances were not released until January 13, 2012, after his hearings were over.  Id.

Plaintiff also relies on the Affidavit of Jason Lavender. Affidavit (Doc. 101).  Lavender attests that on December 9, 2011, he was housed at RMC E 1-112, and he witnessed Trowell physically assault Plaintiff, while Plaintiff was sitting on his assigned

lower bunk, E 1-110.  Id.  Lavender states that after mail call, Trowell went directly to Plaintiff's bunk and assaulted Plaintiff for writing grievances and failing to provide a document with his handwriting for comparison purposes with the grievances written for inmate Edgar Seward.  Id.  Lavender attests that at no time did Plaintiff assault Trowell or place himself in a combative stance towards Trowell.  Id.

Lavender explains that on December 9, 2011 prior to this incident, Trowell had conducted mail call and called inmate Seward forward for his grievances.  Id. at 2.  Lavender states that Trowell, in the presence of everyone in the dormitory, asked Seward whether he wrote the grievances.  Id.  Seward responded no, and Trowell kept Seward's mail/grievances.  Id.  Lavender says that thereafter, Trowell approached Plaintiff and assaulted him as stated above.  Id.

Plaintiff submits a Declaration in support of his response. Declaration (Doc. 70).  Plaintiff avers that he filed grievances against the hospital, Trowell, Sgt. Merola, and Officer Kelly prior to December 6, 2011.  Id. at 2.  Plaintiff states that Trowell threatened him, and then further threatened him with placement in disciplinary and close management confinement in response to Plaintiff's use of the grievance process.  Id.  Plaintiff states that on December 6, 2011, Trowell became irate and singled him out, conducted a major shakedown of Plaintiff's bunk, seized some of

Plaintiff's property, and issued three corrective consultations to Plaintiff for possession of contraband. _Id_. at 2-3. Trowell summoned Plaintiff to the officer's station and told Plaintiff that was step one, and if Plaintiff continued to file grievances more would come. _Id_. at 3. Taylor joined them in the officer's station. _Id_. Plaintiff told Taylor that Trowell was making threats against Plaintiff for using the grievance process. _Id_. Plaintiff told Taylor that Trowell had torn up his bunk, taken his property, written three corrective consultations, and threatened more would come. _Id_. at 3-4.

Plaintiff states that Taylor did nothing to admonish Trowell for his actions. _Id_. at 4. Plaintiff filed a formal grievance on December 6, 2011 concerning Trowell's conduct, but Plaintiff was unable to use it as evidence as it was not returned prior to the disciplinary and close management hearings. _Id_. Plaintiff states that his personal property was returned on December 7, 2011. _Id_. at 6.

Plaintiff attests that on December 9, 2011, Trowell conducted mail call at 8:00 p.m., and called inmate Edgar Seward forward. _Id_. Trowell asked Seward if he wrote the grievances. _Id_. Trowell kept Seward's grievances. _Id_. at 7. Within several minutes, Trowell appeared at Plaintiff's bunk and demanded to see documents containing Plaintiff's signature. _Id_. Plaintiff refused to turn over his documents. _Id_. Trowell attempted to take Plaintiff's

brown legal folder, jumped on Plaintiff, and then sprayed Plaintiff with chemical agents. _Id_. Plaintiff states that at no time did he stand up to be handcuffed or attempt to grab Trowell's hand. _Id_.

Plaintiff provides the Affidavit of L. C. Snead (Doc. 70-2) at 2-3. Snead attests that he was assigned to E1-115 on December 9, 2011, and Plaintiff was assigned to E1-110. _Id_. at 2. Snead, at approximately 8:00 p.m., observed Trowell, during mail call, call inmate Edgar Seward. _Id_. Trowell asked Seward whether he wrote grievances to him. _Id_. Seward refused to answer the question. _Id_. Trowell kept Seward's mail. _Id_. Five to ten minutes later, Trowell approached Plaintiff's bunk and asked him to provide documents with his handwriting. _Id_. at 3. Plaintiff was sitting on his bunk holding a brown accordion legal folder. _Id_. Plaintiff refused to provide documents. _Id_. "It was then that I observed Officer Trowell jump on Inmate Talib/Walker assaulting him and spraying him with chemical agent [sic]." _Id_. Snead states that Plaintiff did not put up any resistance. _Id_.

Plaintiff also submits the Sworn Affidavit of Julio Rodriguez Ruiz (Doc. 70-2) at 4, dated January 18, 2013.[6] He states that on December 9, 2011, at 8:20 p.m., a guard punched Plaintiff in the ear and threw him to the floor. _Id_. Ruiz attests that the guard pressed the button for emergency assistance, and guards arrived and

---

[6] Inmate Ruiz's Affidavit is written in Spanish, but a summary is provided for the ease of the reader.

jumped on Plaintiff again.  <u>Id</u>.  Ruiz described Plaintiff as an older gentleman who does not bother anyone, who spends his time in bed reading and building his case.  <u>Id</u>.  Ruiz states that Plaintiff is innocent regarding the events of December 9, 2011 at 8:20 p.m. <u>Id</u>.

Finally, Plaintiff references the three corrective consultations issued by Trowell.  Exhibit A (Doc. 68) (possession of contraband clothing, extra pair of state boxer shorts; possession of contraband, excess soap and deodorant; and possession of contraband, altered personal property).

## VI. Law and Conclusions

### A.  Injunctive Relief

Plaintiff in his Brief (Doc. 81) at 38, asks that the Court strike his request for injunctive relief as he is no longer confined at RMC.  The Court will grant Plaintiff's request and not address the mootness issue raised in Defendants' Motion at 26-27.

### B.  Individual Capacity

Plaintiff clarifies his position and states that he is suing the Defendants in their individual capacities, not their official capacities.  <u>See</u> Plaintiff's Objection to Defendants' Defenses (Doc. 81-3) at 6, attached to his Brief (Doc. 81).  Therefore, the Court will not address the Eleventh Amendment immunity issue raised in Defendants' Motion at 25.

## C. Eighth Amendment/Excessive Force

"The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII.  In considering an Eighth Amendment excessive force claim, [the Court] must consider both a subjective and objective component: (1) whether the 'officials act[ed] with a sufficiently culpable state of mind,' and (2) 'if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" Tate v. Rockford, 497 F. App'x 921, 923 (11th Cir. 2012) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)), cert. denied, 133 S.Ct. 1822 (2013).

> In both Fourteenth and Eighth Amendment excessive force claims, whether the use of force violates an inmate's constitutional rights "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) (establishing the standard for an Eighth Amendment excessive force claim); see Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (applying the Whitley test in a Fourteenth Amendment excessive force case).  If force is used "maliciously and sadistically for the very purpose of causing harm," then it necessarily shocks the conscience.  See Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987) (stating that the Eighth and Fourteenth Amendments give equivalent protections against excessive force).  If not, then it does not.

<u>Cockrell v. Sparks</u>, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam).

"Although the extent of the injury is a relevant factor in determining the amount of force applied, it is not solely determinative of an Eighth Amendment claim." <u>Muhammad v. Sapp</u>, 494 F. App'x 953, 957 (11th Cir. 2012) (per curiam) (citing <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010)).

> When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. <u>See Whitley</u>, <u>supra</u>, 475 U.S., at 327, 106 S.Ct., at 1088. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today.

<u>Hudson</u>, 503 U.S. at 9.

In this case, the parties have contradictory versions of what happened on December 9, 2011. Defendant Trowell asserts that Plaintiff stood up off his bunk and grabbed his hand. Trowell reacted by snatching his hand away and ordering Plaintiff to turn around and submit to hand restraints. Although Plaintiff turned around, he turned back around and hit Trowell's right hand, knocking the restraints to the floor. Plaintiff kicked the restraints under his bunk. Trowell hit the panic button on his radio, and then administered three, one second bursts of a chemical

agent, striking Plaintiff in the head and upper torso with the chemical spray.  Plaintiff attempted to move towards Trowell, Trowell ordered him to stop, Plaintiff did not comply, and Trowell placed both hands on Plaintiff's shoulders, turned him around and placed him face down on the bunk.  Trowell kept Plaintiff pinned down until assistance arrived.  The other officers assisted in placing Plaintiff in hand restraints.  Plaintiff was escorted to the decontamination shower and taken for a post use-of-force physical.

Plaintiff, on the other hand, asserts that Defendant Trowell approached him while he was sitting on his bunk and asked for something with Plaintiff's handwriting on it.  Plaintiff refused Trowell's demand to hand over documents.  Plaintiff states Trowell tried to take Plaintiff's legal folder, jumped on Plaintiff without any legitimate penological purpose, used excessive force (including kicking Plaintiff in the groin), and sprayed Plaintiff with chemical agents.  Plaintiff says he was hit with a balled fist, with handcuffs.[7]

Defendants describe Plaintiff's injuries as minor; however, Plaintiff alleges that the force was used maliciously and sadistically for the very purpose of causing harm, and not for any

_____

[7] Plaintiff avers that he did not stand up, attempt to grab Trowell's hand, or put forth resistance.  Plaintiff will not prevail on the retaliatory discipline claim because he was found guilty of battery of a correctional officer.  The question remains whether Trowell used excessive force during the incident.

legitimate penological purpose.   There is evidence of injury.[8]
Summary judgment is appropriate if the pleadings and other evidence
demonstrate that "there is no genuine dispute as to any material
fact and the movant is entitled to a judgment as a matter of law."
Fed. R. Civ. P.   Based on a thorough review of the Amended
Complaint, Declarations, Affidavits, Plaintiff's Deposition, and
other evidence before the Court, the Court finds there are material
issues of fact with respect to the Eighth Amendment claim of
excessive force.  Although Defendant Trowell denies using excessive
force, Plaintiff has presented a verified Amended Complaint
contending otherwise and supporting evidence to support his
position.

     In this case, the parties have submitted different stories,
and the conflicting versions of the events are enough to defeat
summary judgment.   Plenary summary judgment is not appropriate
under these circumstances; the evaluation of the evidence is a
matter left for the jury.  See Logan v. Smith, 439 F. App'x 798,
800-801 (11th Cir. 2011) (per curiam) (deciding the video and
medical evidence did not flatly contradict the inmate's
allegations, disallowing plenary summary judgment on the excessive
force claim, finding it inappropriate, and determining the
evaluation of the evidence is a matter for a jury); Hall v.

---

     [8] The extent of the injury will be addressed under the damages
section of this opinion.

Bennett, 447 F. App'x 921, 923 (11th Cir. 2011) (per curiam) (citation omitted) (acknowledging that the focus of the inquiry is on the nature of the force applied, not the extent of injury, and recognizing that there were two competing, contradictory stories with a record presenting a material issue of fact concerning an alleged assault by an officer on an inmate, precluding summary judgment).

Based on the Court's core judicial inquiry in excessive force claims, addressing the nature of the force rather than focusing on the extent of the injury, the Court concludes that Defendant Trowell's Motion for Summary Judgment should be denied with respect to Plaintiff's excessive force claim because there are genuine issues of material fact that prevent the entry of summary judgment at this stage of the proceeding. See Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (per curiam) (recognizing the shift in the judicial inquiry from the extent of the injury to the nature of the force, and asking whether the force was applied maliciously and sadistically to cause harm).

### D.  Eighth Amendment/Failure to Protect

Plaintiff claims Defendants Taylor and Riedl failed to protect him from Trowell.  The Court will first address Plaintiff's claim against Taylor.  Plaintiff, in his Deposition, states that Taylor showed no concern when Plaintiff complained about the actions of Trowell.  Plaintiff relates that Taylor came down to the dorm prior

to December 9, and Plaintiff told Taylor that Trowell said he was going to get him and Plaintiff feared for his safety.  Ex. H at 103 (Doc. 60-8).  On the other hand, Taylor, in his Declaration, states that he was not told that Plaintiff was in fear of being harmed by Trowell prior to the December 9 incident.  Ex. B at 2.  Indeed, Taylor contends that there was no such conversation.  Id.  Taylor says he was totally unaware that Plaintiff felt he was in danger of serious harm.  Id.

These contradictory explanations of the events which transpired prior to December 9, 2011 leave this Court with conflicting versions of the facts concerning the failure to protect claim, certainly enough to defeat summary judgment.  Again, Plaintiff submitted a verified Amended Complaint, and both parties submitted affidavits, declarations, a deposition, and other records to support their respective positions.  Accordingly, Defendants' Motion will be denied with respect to Plaintiff's Eighth Amendment claim of failure to protect against Defendant Taylor because there are genuine issues of material fact that prevent the entry of summary judgment at this stage of the proceeding.

Plaintiff also claims that Defendant Riedl failed to protect him.  This claim is vague and imprecise.  Apparently, Plaintiff is claiming that because he wrote grievances dated December 6, 2011 addressed to the Warden, Riedl should have been aware of Taylor's

threats and should have taken some action to protect Plaintiff from Taylor.  Amended Complaint at 7.

Although the grievances are addressed to the Warden, it appears that the Warden's representatives signed all of the responses.  Ex. I.  Also of import, although all of the grievances are dated December 6, 2011, they were not received by the Warden's office until December 9, 2011, the date of the alleged use of force.  Id.  All of the responses are dated December 12, 2011.  Id.

Based on the record before the Court, the grievances were received by the Warden's office on the date of the use-of-force incident, and they were addressed and responded to on December 12, 2011.  Thus, the record supports Riedl's Declaration that he was not made aware of any threats of physical violence to Plaintiff from Trowell prior to December 9, 2011.  Indeed, the grievances were not received until December 9th and they were not addressed until December 12th.  Furthermore, the grievances were addressed by staff, not by the Warden personally.  As noted by the Defendants, Plaintiff has not offered any objective proof that Riedl had knowledge that there was a substantial risk of serious harm to Plaintiff and Plaintiff does not allege that he personally informed Riedl of his fears.

Finally, to the extent Plaintiff is claiming Riedl failed to intervene, Riedl was not at work during the time of the search incident on December 6, 2011 or the use-of-force incident on

December 9, 2011.  Ex. C at 2.  Thus, he was not in a position to intervene.  See Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008) (concluding the officer must be in a position to intervene to be liable for failure to protect).

Accordingly, Defendants' Motion will be granted with respect to Plaintiff's Eighth Amendment claim of failure to protect against Defendant Riedl because there are no genuine issues of material fact preventing the entry of summary judgment based on the record before the Court.

### E.  First Amendment/Retaliation

The Court will address Petitioner's claim of a First Amendment violation.  In a prison setting, the rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance or a lawsuit concerning the conditions of his imprisonment.  Moulds v. Bullard, 345 F. App'x 387, 393 (11th Cir. 2009) (per curiam) (citation omitted); Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008); see also Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005) (adopting the standard that "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights"), cert. denied, 549 U.S. 809 (2006).

"The core of [a retaliation claim brought pursuant to 42 U.S.C. § 1983] is that the prisoner is being retaliated against for

exercising his right to free speech." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (citation omitted), cert. denied, 133 S.Ct. 445 (2012).  Three elements must be established to support a retaliation claim: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citation and footnote omitted).

Plaintiff alleges that protected conduct, the filing of prison administrative grievances, was the motivating factor behind Trowell's actions.  See Smith v. Fla. Dep't of Corr., 713 F.3d 1059, 1063 (11th Cir. 2013) (per curiam) (citing Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)).  Plaintiff not only alleged but provided supporting evidence that he was engaged in constitutionally protected speech or conduct, and that the alleged retaliatory acts adversely affected his protected speech or conduct.  Here the alleged retaliatory acts included verbal threats of harm, administrative sanctions, and destructive and excessive searches.

Although Trowell has met his initial burden of showing this Court, by reference to the Department's search policy and his own Declaration, that he was conducting a routine search on December 9,

2011, Plaintiff has gone beyond the pleadings and by his affidavits, deposition, supporting affidavits of inmate witnesses, and other documents designates specific facts showing that there is a genuine issue for trial.  Here, Plaintiff has provided evidence that he was singled out, and that on December 9, 2011, Trowell did not come to his bunk to conduct a search, instead he came to acquire a document with Plaintiff's handwriting because Trowell believed that Plaintiff was assisting inmate Seward, a grievously ill inmate, in filing grievances.  See the supporting Affidavits of inmates Lavender, Snead, and Ruiz.

Of import, Plaintiff has adequately shown a causal relationship between the alleged retaliatory action and the protected speech.  To establish the third prong, a plaintiff is required to do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive.  Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (citations omitted).  "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit."  Jemison v. Wise, 386 F. App'x 961, 965 (11th Cir. 2010) (per curiam) (citation omitted) (finding the district court erred by dismissing a complaint alleging retaliation with prejudice, "regardless of whether the retaliation claim ultimately [would] ha[ve] merit").

Plaintiff, in his Declaration at 2 (Doc. 70), states that he filed grievances against the hospital, Trowell, Sgt. Merola, and Officer Kelly prior to December 6, 2011, and Trowell threatened him with sanctions/harm in response to Plaintiff's use of the grievance process.  Plaintiff avers that after conducting an excessive and destructive search of Plaintiff's bunk, Trowell threatened more to come if Plaintiff continued to file grievances.  Defendant Trowell counters that Plaintiff did not file any "formal" grievances against him prior to December 6, 2011.  Defendants' Motion at 12. Plaintiff, on the other hand, states that Trowell was angry because Plaintiff filed grievances not only against him, but against other officers and the hospital, and assisted other inmates in filing grievances.  Moreover, Plaintiff filed multiple informal grievances against Trowell on December 6, 2011.

Plaintiff has adequately provided evidence that he was threatened for using the grievance procedure and subjected to mistreatment.  As such, Plaintiff has designated specific facts showing that there is a genuine issue for trial.  Here, the actions allegedly taken by Trowell would likely deter a person of ordinary firmness from the exercise of First Amendment rights.  Bennet v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005) ("A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights."), cert. denied, 549 U.S. 809 (2006).

The Court, however, grants Defendants' Motion with respect to the retaliatory discipline claim. Plaintiff was charged with battery, conduct that actually violates a prison rule and is not protected speech, and he was found guilty of the charged behavior after being afforded due process.[9] Thus, the retaliatory discipline claim fails:

> If a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report. Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel. In the particular circumstances here, O'Bryant has suffered adverse action (here 30 days' disciplinary confinement) because he actually violated the prison rules and not because of his earlier grievances. To find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance. Because he was guilty of the disciplinary charges resulting

---

[9] Plaintiff attempts to challenge the process he received by claiming that he was not provided with copies of his December 6, 2011 grievances until after his disciplinary hearing, but he admits that he was allowed to testify as to the filing of the grievances and the content of the grievances. Ex. H at 71-74. The fact that the disciplinary team did not give great weight to this testimony or find this information sufficient to counter the evidence against Plaintiff that he had committed a battery does not mean that he was deprived of due process. He was allowed to obtain witness statements and testify to the content of his grievances, although the physical grievances were at RMC.

in the disciplinary harm at issue, O'Bryant's
retaliation claim fails.

O'Bryant v. Finch, 637 F.3d at 1215-16.

To the extent that Plaintiff claims a retaliatory transfer,
that claim also fails. Riedl has met his initial burden of showing
this Court, by reference to his Declaration (Ex. C), Cynthia Davis'
Declaration (Ex. E-1), and the record of the transfer request (Ex.
E-2), that he did not order a retaliatory transfer of Plaintiff to
a different institution. Riedl attests that he did not sign or
order Plaintiff's transfer. Ex. C at 2. Plaintiff has not gone
beyond the pleadings to designate specific facts showing that there
is a genuine issue for trial in this regard.

### F. Disciplinary and Close Management Confinement

As noted above, Plaintiff received due process in his
disciplinary proceeding, and he is not entitled to relief on his
retaliatory discipline claim. To the extent Plaintiff is raising
a due process claim because he was confined in disciplinary and
close management confinement, the alleged actions of the Defendants
did not impose an atypical and significant hardship on Plaintiff in
relation to the ordinary incidents of prison life. See Sandin v.
Conner, 515 U.S. 472, 484 (1995) (holding that the prisoner's
thirty-day disciplinary segregation "did not present the type of
atypical, significant deprivation in which a State might
conceivably create a liberty interest"); Wilson v. Blankenship, 163
F.3d 1284, 1295 n.17 (11th Cir. 1998) (finding the due process

34

clause does not create a liberty interest in being confined in general population rather than administrative segregation); Hewitt v. Helms, 459 U.S. 460, 466 (1983) (receded from by Sandin) (an inmate has no liberty interest in being confined in general population rather than in the more restrictive atmosphere of administrative or disciplinary confinement); Defendants' Motion at 17-19. Therefore, based on the reasoning of Sandin and its progeny, Defendants' Motion will be granted in this regard.

Plaintiff also claims that Riedl did not timely respond to his grievances or improperly failed to act on his administrative grievances. Defendants' Motion is due to be granted in this regard. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (finding that prison officials who were not involved in an inmate's termination from his commissary job, and whose only roles involved the denial of administrative grievances or the failure to act, were not liable under § 1983 on a theory that the failure to act constituted an acquiescence in the unconstitutional conduct), cert. denied, 530 U.S. 1264 (2000); Thomas v. Warner, 237 F. App'x 435, 438 ("Plaintiff stated no due process claim based on his inability to introduce certain evidence in his disciplinary hearing that resulted in . . . isolation."). An inmate has no due process interest in a prison's voluntary grievance procedure. Id. at 437-48.

Here, Plaintiff did not lose gain time; therefore, his confinement was not extended beyond the sentence imposed by the state court.  Also, he was not subjected to atypical or significant hardship by his placement in disciplinary or close management confinement.  Thus, Defendants' Motion will be granted with respect to Plaintiff's claims regarding the disciplinary process and disciplinary confinement, close management confinement, and the grievance procedure.

### G.  Religion

In a rather vague and conclusory claim, Plaintiff states that Trowell took certain actions because Plaintiff is a Muslim.  Upon review of Plaintiff's deposition, this assumption is unsupported by operative facts.  <u>See</u> Defendants' Motion at 19.  Plaintiff's vague and conclusory allegation will not support a claim under 42 U.S.C. § 1983, and Defendants' Motion is due to be granted with respect to this claim.

### H.  42 U.S.C. § 1997e(e)

Defendants contend that Plaintiff has not suffered an injury sufficient to withstand 42 U.S.C. § 1997e(e) with respect to Plaintiff's claim for compensatory or punitive damages. Defendants' Motion at 19-21.  In <u>Napier v. Preslicka</u>, 314 F.3d 528, 531-32 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 540 U.S. 1112 (2004), the Eleventh Circuit addressed the requirements of 1997e(e):

> Subsection (e) of 42 U.S.C. § 1997e
> states that "[n]o Federal civil action may be

brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." This statute is intended to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints. See Harris v. Garner, 216 F.3d 970, 976-79 (11th Cir. 2000) (en banc) (surveying the legislative history of the PLRA). An action barred by § 1997e(e) is barred only during the imprisonment of the plaintiff; therefore, such action should be dismissed without prejudice by the district court, allowing the prisoner to bring his claim once released and, presumably, once the litigation cost-benefit balance is restored to normal. Id. at 980.

Tracking the language of the statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody. In Harris, we decided that the phrase "Federal civil action" means all federal claims, including constitutional claims. 216 F.3d at 984-85.

The standard in an excessive use of force case is as follows:

[O]ur core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). In determining whether force was applied maliciously and sadistically, we look to five factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates[, as reasonably perceived by the responsible officials on the basis of facts known to them]..." Campbell v. Sikes, 169 F.3d

37

> 1353, 1375 (11th Cir. 1999) (quotations
> omitted).[10]   However,   "[t]he   Eighth
> Amendment's prohibition of cruel and unusual
> punishments   necessarily   excludes   from
> constitutional recognition <u>de</u> <u>minimis</u> uses of
> physical force, provided that the use of force
> is not of a sort repugnant to the conscience
> of mankind."  <u>Hudson</u>, 112 S.Ct. at 1000
> (quotations omitted).

<u>McKinney v. Sheriff</u>, 520 F. App'x 903, 905 (11th Cir. 2013) (per

curiam).

The record shows that Plaintiff suffered some injuries.  His

eyes were red and teary, he had a small raised area behind his left

ear which was tender to the touch, he sustained a reddened area to

his left shoulder, and a swollen right scrotum, where he claims he

was kicked.[11]  Under these circumstances, the Court is not inclined

to bar Plaintiff's claim for compensatory and punitive damages or

limit his recovery to nominal damages with regard to his claim of

excessive force and failure to protect.  Defendants' Motion is due

to be denied in this regard.

## I.  Deprivation of Property/Retaliation

Plaintiff has failed to present any operative facts showing

that Defendant Trowell took his glasses or his wheelchair.

Plaintiff's Deposition reflects that he has no idea what happened

---

[10] <u>See</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 321 (1986).

[11] Plaintiff had a pre-existing injury, but he claims it was
aggravated by being kicked, resulting in a swollen right scrotum.
Plaintiff complained of pain in the swollen hernia area of his
right scrotum upon examination.  The Court notes that Plaintiff
eventually received surgery for his hernia.

to his glasses and his wheelchair after he was removed from his dormitory and taken for his decontamination shower and post use-of-force physical.[12]  Ex. H at 121-22.  More than conclusory and vague allegations are required to state a cause of action under 42 U.S.C. § 1983.  See L.S.T., Inc., v. Crow, 49 F.3d 679, 684 (11th Cir. 1995) (per curiam); Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984).

Moreover, the Eleventh Circuit "'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases."  Rodriquez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)).  Plaintiff has failed to show any causal connection between Defendant Trowell's actions and the seizure and loss of Plaintiff's glasses and the switch to a different state wheelchair.  The Court notes that Plaintiff's glasses have since been returned to him, and the wheelchair was state property. Defendants' Motion at 21.  Plaintiff does not assert that he was deprived of the use of a different wheelchair.  Defendants' Motion is due to be granted with respect to the deprivation of property/retaliation claim.

---

[12] Plaintiff was transported to confinement in a different state wheelchair.  Ex. H at 22.

## J.  Appointment of Counsel

In his Amended Complaint, Plaintiff requests the appointment of counsel.  The Court will deny Plaintiff's request for the appointment of counsel without prejudice to Plaintiff refiling a separate motion for appointment of counsel with a memorandum of law in compliance with the Local Rules and the Federal Rules of Civil Procedure.

## K.  Qualified Immunity

Defendants Trowell, Taylor and Riedl assert that they are entitled to qualified immunity from monetary damages in their individual capacities with regard to the excessive force and failure to protect claims.  Defendants' Motion at 23-25.  It is undisputed that the Defendants were engaged in discretionary functions during the events at issue.  Given the undersigned conclusion that summary judgment should be denied as to the Eighth Amendment claim against Defendant Trowell for the excessive use of force, and the Eighth Amendment claim against Defendant Taylor for failure to protect, and based on the state of the law on qualified immunity in the Eleventh Circuit, qualified immunity should be denied as to Defendants Trowell and Taylor.

To defeat qualified immunity with respect to Defendant Riedl, Plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (per

curiam).  Since Defendant Riedl was acting within the scope of his discretionary authority when the alleged failure to intervene occurred, the burden is on Plaintiff to show that the Defendant is not entitled to qualified immunity.  Skop v. City of Atlanta, 485 F.3d 1130, 1136-37 (11th Cir.), reh'q and reh'q en banc denied, 254 F. App'x 803 (11th Cir. 2007).  Here, a reasonable jury could not find that the Defendant Riedl violated Plaintiff's Eighth Amendment rights; therefore, Defendant Riedl is entitled to qualified immunity.

Because Defendant Riedl did not commit a constitutional violation, he is entitled to qualified immunity.  See Hadley v. Gutierrez, 526 F.3d 1324, 1331 (11th Cir. 2008) (citing Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir. 2000)) (finding the plaintiff failed to present evidence from which a reasonable jury could find that the defendant could have stopped the use of force); Ensley v. Soper, 142 F.3d 1402, 1408 (11th Cir. 1998) (concluding that no reasonable juror could find that the defendant was in a position to intervene and finding "no evidence that might lead a reasonable juror to conclude that [the defendant] violated any clearly established right of [the plaintiff] to intervention.").  Plaintiff did not meet his burden to demonstrate that Riedl had a real opportunity to intervene/protect and was in a position to intervene/protect, but failed to do so.  Thus,

41

Defendant Riedl is entitled to qualified immunity and should be dismissed from this action.

Therefore, it is now

**ORDERED:**

1.    Plaintiff's request to strike his request for injunctive relief, <u>see</u> Brief (Doc. 81), is **GRANTED**.  Plaintiff request for injunctive relief is **STRICKEN**.

2.    Defendants' Motion for Summary Judgment (Doc. 60) is **GRANTED** with respect to Plaintiff's Eighth Amendment failure to protect claim against Defendant Riedl; it is **GRANTED** with respect to the retaliatory discipline claim (the charge of battery) against Defendant Trowell and the retaliatory transfer claim against Riedl; it is **GRANTED** with respect to Plaintiff's claims regarding the disciplinary process and disciplinary confinement, close management confinement, and the grievance procedure, including the claim that Riedl did not timely respond to grievances or improperly failed to act on administrative grievances; it is **GRANTED** with respect to Plaintiff's unspecified religion claim against Defendant Trowell; it is **GRANTED** with respect to the deprivation of property/retaliation claim against Defendant Trowell; and it is **GRANTED** with respect to Riedl's claim of qualified immunity. **Defendant Riedl** is **DISMISSED** from the action **with prejudice**. Judgment to that effect will be withheld pending adjudication of the action as a whole.

Defendants' Motion for Summary Judgment (Doc. 60) is **DENIED** with respect to Plaintiff's Eighth Amendment excessive force claim against Trowell; with respect to Plaintiff's Eighth Amendment failure to protect claim against Taylor; with respect to Plaintiff's First Amendment retaliation claim against Trowell; with respect to the assertion that Plaintiff did not suffer an injury sufficient to withstand 42 U.S.C. § 1997e(e); and with respect to Defendants Trowell and Taylor's claim to be entitled to qualified immunity.

2.   Plaintiff's request for the appointment of counsel is **DENIED without prejudice** to Plaintiff filing a separate motion for appointment of counsel with a memorandum of law in compliance with the Local Rules and Federal Rules of Civil Procedure.  Plaintiff may file a motion for appointment of counsel with a memorandum of law within **THIRTY (30) DAYS** from the date of this order.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of February, 2016.

_____
BRIAN J. DAVIS
United States District Judge

sa 2/18
c:
Naiym Shahaab Talib, a/k/a Lonnie Walker
Counsel of Record